O

# United States District Court
# Central District of California

| | |
|---|---|
| LORI MANNARINO; SAM TREIHAFT,<br><br>Plaintiffs,<br><br>v.<br><br>FAY SERVICING LLC; PROF-2013-M4 REO I LLC; PROF-2013-S REMIC TRUST III; STRUCTURED FINANCIAL SERVICES-PROF; U.S. NATIONAL BANK ASSOCIATION; U.S. ROF III LEGAL TITLE TRUST 2015-1; BARRETT, DAFFIN, FRAPPIER, TREADER AND WEISS LLP; BDF LAW GROUP; BEN MORRIS; TYRONE BELL; JEN JOLLS; MICHAEL SCHUSTER; VIKKI M. PALUMBO; E. STEWART; TANYA MCCULLAH; ERICA JONES; CLAYTON GOFF; TALISHA WALLACE; YOMARI QUINTANILLA; DAYNA BUCARO; MICHAEL MCGEE; TITLE 365; DOES 1–10 INCLUSIVE,<br><br>Defendants. | Case No. 2:15-cv-02409-ODW(PLAx)<br><br>**ORDER DENYING PLAINTIFFS'** ***EX PARTE*** **APPLICATION FOR A TEMPORARY RESTRAINING ORDER [3]** |

### I. INTRODUCTION

On April 1, 2015, Plaintiffs Lori Mannarino and Sam Treihaft filed an eight-

count Complaint against the twenty-two named Defendants in the above caption. (ECF No. 1.) The Complaint alleges that Defendants conspired to impose and collect a "non-existent debt" from Plaintiffs. (*Id.* ¶ 40.) On the same day Plaintiffs filed their Complaint, they also filed an *Ex Parte* Application for Temporary Restraining Order (the "TRO Application"). (ECF No. 3 ["App."].) The TRO Application seeks to enjoin Defendants from executing a foreclosure sale of Plaintiffs' home set to occur on April 21, 2015. For the reasons stated below, the Court **DENIES** Plaintiffs' *Ex Parte* Application.

## II.   FACTUAL BACKGROUND

The only relevant facts relate to the procedural posture of this case. The Complaint and TRO were filed on the same day—April 1, 2015. In their TRO, Plaintiffs claim that immediate injunctive relief is necessary because "Defendants have noticed a Trustee's Sale of Plaintiffs' Property to take place at 11:00 a.m. on April 21, 2015." (App. at 2.) In explaining the *ex parte* nature of the TRO Application, Plaintiffs claim that Defendants were "unreachable" and they "made the following unsuccessful attempts to reach opposing counsel/unrepresented party: by telephone on March 30, 2015 and March 31, 2015." (*Id.* at 3.) Plaintiffs also included their own declaration which lists the "contact information of the opposing counsel/unrepresented part[ies]." (Mannarino Decl. at 6.) This list includes the name, phone number, and mailing address of nearly every Defendant. (*Id.* at 6–8.)

On April 2, 2015, the Court issued a Self-Representation Order. (ECF No. 11.) The Order explains that all matters brought to the Court's attention must be placed in writing and Plaintiffs must also "serve it on the opposing party." (*Id.* at 3.) The Order also details the requirements of service: "It is important to promptly and properly serve the opposing party, especially with the summons and complaint when initiating an action," and the plaintiff "must always inform the Court whenever you serve a filing on an opposing party." (*Id.* at 5.)

At the time Plaintiffs filed their Complaint and TRO Application, they did not

request a summons and thus the Clerk of the Court has yet to issue one. As a result, there is no docket entry indicating that service was effectuated.

### III. LEGAL STANDARD

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). A court may only grant such relief "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To prevail, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm absent preliminary injunctive relief; (3) that the balance of equities tips in the moving party's favor; and (4) that preliminary injunctive relief is in the public interest (the "*Winter* factors"). *Id.* at 20. "Under *Winter*, plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (original emphasis). In the Ninth Circuit, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can [also] support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132, 1135 (holding that the "sliding scale" test remains viable "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest").

A court may only issue an *ex parte* temporary restraining order only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). Although the requirements in Rule 65(b) are stringent, they "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a

dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 438–39 (1974). "The standard for issuing a temporary restraining order without notice to the adverse party is very stringent, and the burden on the movant to show my notice is not required is accordingly very high." *Shallman v. Ocwen Loan Servicing, LLC*, No. 14-cv-0863, 2014 WL 2533836, at *2 (C.D. Cal. June 5, 2014). "The Ninth Circuit has cautioned that there are very few circumstances justifying the issuance of an ex parte TRO." *Caldwell v. Wells Fargo Bank, N.A.*, No. 13-cv-1344, 2013 WL 3789808, at *3 (N.D. Cal. July 16, 2013) (citing *Reno Air Racing Assoc., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006)).

## IV.  DISCUSSION

The Court cannot grant Plaintiffs' TRO Application because Plaintiffs did not comply with the basic procedural requirements necessary for *ex parte* relief. This failure is not a matter of unwitting ignorance of a pro se litigant, but instead a deliberate attempt to skirt the rules.

**A.  Plaintiffs Made No Reasonable Attempt to Contact Well-Known Defendants**

The Court has several concerns about Plaintiffs' intentions in bringing this suit. First, Plaintiffs made no attempt whatsoever to serve Defendants with the Complaint. From the date the Complaint was filed until today, over two weeks have passed and Plaintiffs have not even bothered to request a summons from the Clerk's Office. Defendants are yet to be informed that they were sued. The Court and Plaintiffs are the only entities aware that this lawsuit exists. Second, Plaintiffs made no good-faith effort to notice Defendants of the pending TRO Application. Plaintiffs claim that they tried calling Defendants on the phone but were unsuccessful, and therefore Defendants are "unreachable." (App. at 3.) This is not an acceptable attempt. Plaintiffs possess the names, phone numbers, and addresses of nearly every Defendant, and provided this information to the Court in their pleadings. Plaintiffs made no attempt to mail a copy of the TRO Application to Defendant before filing the suit or in the two weeks

between filing the suit and the issuance of this Order. The Court waited patiently in hopes that Plaintiffs would make further attempts to give notice and allow Defendants to respond, but it is evident that Plaintiffs have no such intent.

At the present, Defendants have no knowledge of the pending TRO Application or the lawsuit itself. Plaintiffs made no effort to serve process and made a minimal—at best—effort to notice Defendants of the TRO Application. An *ex parte* TRO is an extraordinary remedy that requires Plaintiffs to show that damage will result before Defendants can be heard *and* they tried to provide notice but failed. *See* Fed. R. Civ. P. 65(b)(1). There is simply no reason why Defendants cannot be heard. Plaintiffs have all of the necessary contact information. Plaintiffs found time to e-mail and call the Court on multiple occasions inquiring the status of their TRO Application, but could not find time to mail something to large, well-known, identified companies. Plaintiff failed to satisfy the requirements of Rule 65. It is clear to the Court that Plaintiffs do not want Defendants to be heard.

**B.      Plaintiffs Were Aware of Service and Notice Requirements**

Plaintiffs are fully aware that service and notice are necessary requirements. The Federal Rules of Civil Procedure establishes stringent rules for *ex parte* motions. *See* Fed. R. Civ. P. 65. Plaintiffs were specifically instructed in the Self-Representation Order that it is "important to promptly and properly serve the opposing party." (ECF No. 11 at 5.) The Central District's Local Rules provide that it "shall be the duty of the attorney so applying for [*ex parte* relief] (a) to make reasonable, good faith efforts orally to advise counsel for all other parties, if known, of the date and substance of the proposed *ex parte* application and (b) to advise the Court in writing and under oath of efforts to contact other counsel and whether any other counsel, after such advice, opposes the application." C.D. Cal. L.R. 7-19.1. This Court's own local procedures, which are posted on the Central District's website, state: "In those cases where the opposing party has not previously appeared, the moving party shall, following service of the *ex parte* papers, notify the opposition that opposing papers

must be filed no later than 48 hours following service." *Wright Civil Chamber Rule No. VII.C.* The Court's internal procedures further state: "The Court will not rule on any application for [TRO] relief for at least 24 hours after the party subject to the requested order has been served, unless service is excused. Such party may file opposing or responding papers in the interim." *Wright Civil Chamber Rule No. VII.D.*

Between the Federal Rules, Central District's Local Rules, this Court's local rules and procedures, and the Self-Representation Order, Plaintiffs cannot claim that they were unaware of the requirements. Not only is there no excuse in failing to comply, but Plaintiffs' proffered excuse is unreasonable. The Court will not ignore the most basic tenants of due process—notice and service—simply because Plaintiffs do not feel like mailing the TRO Application to Defendants.

## C.     Plaintiffs Cannot Hide Behind Their Pro Se Status

There is further evidence that this is not a case of an uninformed pro se litigant. Plaintiffs are quite versed in representing themselves in foreclosure proceedings. In 2013, Plaintiffs sued—and served—Bank of America raising many of the same claims in this action in an effort to prevent a foreclosure on another home. Plaintiffs even appealed the dismissal of their complaint and pursued their action all the way to the United States Supreme Court where certiorari was ultimately denied. *Mannarino v. Bank of Am., N.A.*, No. B243803, 2013 WL 3968791 (Cal. Ct. App. July 31, 2013), *cert. denied*, 83 U.S.L.W. 3216 (Oct. 14, 2014) (No. 14-5734). In light of Plaintiffs' litigation history, the Court has little doubt that Plaintiffs know how to serve a complaint and give notice to the opposing party. The fact that no such service or notice was completed in this instant action is evidence that Plaintiffs do not want to provide service or notice. Plaintiffs want an injunction without any representation from the other side, but the rules do not allow such a result. Plaintiffs' pro se status is no excuse.

## D.     Precedent Authorizes a Denial of TRO on Notice Grounds Alone

Courts are unwilling to relax the notice requirements. In *Hedges v. Wesley*, a

1  Central District court denied an *ex parte* TRO application on grounds that "there does
2  not appear to have been a proof of service filed for either the complaint or the
3  application for relief." No. 2:15-cv-00713, 2015 WL 470379, at *2 (C.D. Cal. Feb. 3,
4  2015). The plaintiff failed to explain "why such notice should not be required" and
5  "[f]or this reason, the Court may not issue an injunction or temporary restraining order
6  on plaintiff's application." *Id.* Other federal courts have reached the same
7  conclusion. *See, e.g., Eichner v. Bank of Am., N.A.*, No. 13-cv-3635, 2013 WL
8  4483521, at *2 (N.D. Cal. Aug. 20, 2013) ("[T]he Court concludes that Plaintiff has
9  failed to satisfy the procedural requirements necessary to justify the issuance of an *ex
10 parte* TRO. Specifically, Plaintiff has not shown that she has given proper notice to
11 Defendant under Civil Local Rule 65-1(b)."); *Le v. 1st Nat. Lending Servs.*, No. 13-
12 cv-01244, 2013 WL 2555556, at *3 (N.D. Cal. June 7, 2013) ("Plaintiffs have failed
13 to comply with the procedural requirements for filing a temporary restraining order,
14 which mandate that Plaintiff either give notice to opposing counsel or party, or certify
15 in writing efforts made to give notice and the reasons why it should not be required.");
16 *Ludyjan-Woods v. Am. Mortgage Exp. Corp.*, No. 12-cv-2892, 2013 WL 417327, at
17 *4 (S.D. Cal. Jan. 31, 2013) ("Nothing in the [TRO] Application gives any reason to
18 believe Defendants have been sent, shown, or told about the Application.").
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

## V. CONCLUSION

For the reasons discussed above, the Court hereby **DENIES** Plaintiffs' *Ex Parte* Application for a Temporary Restraining Order. (ECF No. 3.) The Court, once again, highly advises Plaintiffs to comply with the multitude of rules regarding service of process and *ex parte* procedures. Should Plaintiffs decide to file another TRO application, such a request must be in compliance with this Order and all relevant rules and regulations mentioned above.

**IT IS SO ORDERED.**

April 15, 2015

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**